**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAROUT KAAKEJIAN, | Case No.: 1:24-cv-0011 JLT CDB |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO AMEND |
| v. | |
| GENERAL MOTORS, LLC, et al., | (Doc. 6) |
| Defendants. | |

Harout Kaakejian purchased a Chevrolet Bolt manufactured by General Motors, which Plaintiff believes was defective due to mileage, battery, and safety issues. Kaakejian seeks to hold General Motors liable for breaching express and implied warranties, violations of the Song-Beverly Consumer Warranty Act, fraud, and violations of California's Unfair Competition Law. (*See generally* Doc. 1-1.) General Motors seeks dismissal of the claims for fraud and the UCL, asserting Kaakejian fails to state a claim upon which relief can be granted or satisfy the heightened pleading standards required for a claim for fraud. (Doc. 6.) Kaakejian opposes the motion and asserts leave to amend should be granted. (Doc. 8.) For the reasons set forth below, the motion to dismiss is **GRANTED**, and the fourth and fifth causes of action are **DISMISSED** with leave to amend.

///

///

///

I.      **Background and Plaintiff's Allegations**[1]

Kaakejian purchased a new 2021 Chevrolet Bolt—"for personal, family, and/or household purposes"— from Three-Way Chevrolet Co. on April 16, 2021.[2] (Doc. 1-1 at 3, ¶¶ 4-6.) Kaakejian contends that Three-Way Chevrolet is "an authorized dealer and agent of General Motors," which "manufactured and/or distributed" the 2021 Chevrolet Bolt. (*Id.*) Kaakejian alleges that "General Motors … do[es] not sell vehicles directly to members of the general public." (*Id.*, ¶ 6.) Kaakejian contends, "General Motors issued an express warranty which would only be issued by General Motors as a result of the sale of the vehicle." (*Id.*) According to Kaakejian, "[t]he sale of the vehicle by General Motors' dealership, coupled with the issuance of the warranty, created a transactional and contractual relationship between General Motors and Plaintiff." (*Id.*)

General Motors advertised the Chevrolet Bolt "as an affordable, long range vehicle" when announcing a partnership for the vehicle's production in October 2015. (Doc. 1-1 at 5, ¶ 14.) In a January 2016 press release, "General Motors said the Bolt will have a battery range over 200 miles because of the use of a battery with improved thermal operating performance." (*Id.*, ¶ 15.) Kaakejian contends this "mileage representation was made absent any reference to the EPA estimated mileage range." (*Id.*)

According to Kaakejian, "in December 2016, General Motors first became aware of issues with the battery in the Bolt," and instituted a process to exchange and replace defective batteries. (Doc. 1-1 at 5, ¶ 16.) "Despite this knowledge, General Motors began running commercials in January 2017 featuring the range of the Bolt's battery," and advertised it as a 'long range' and 'affordable' vehicle." (*Id.*, ¶ 17.) In October 2017, the National Highway Traffic Safety Administration "published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition." (*Id.*, ¶ 18.) The following month, "General Motors created a repair program for the Bolt in response to findings of issues with low voltage in the batteries." (*Id.*, ¶ 19.)

Kaakejian asserts that throughout 2018, General Motors continued to address battery issues with

---

[1] The parties' names are emphasized in capital letters throughout the complaint. In summarizing the allegations, Court omits this emphasis.
[2] The complaint indicates two different sale dates: April 16, 2021 (Doc. 1-1 at 3, ¶ 6) and September 6, 2020. (*Compare* Doc. 1-1 at 3, ¶ 6 *with id.* at 6, ¶ 25.) However, in the opposition to the motion to dismiss, Kaakejian indicates the sale date is April 16, 2021. (Doc. 8 at 1.)

the Bolt. (Doc. 1-1 at 5, ¶¶ 20-22.) "In April 2018, General Motors created [a] program to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion." (*Id.*, ¶ 20.) In May 2018, the company "notified its dealers regarding issues with the batteries in the Bolt." (*Id.*, ¶21.) "In August 2018, General Motors created another program related to the battery's software and its ability to monitor the charge of the battery." (*Id.*, ¶ 22.)

"In March 2019, General Motors became aware of the first battery fire involving the Chevrolet Bolt." (Doc. 1-1 at 5, ¶ 23.) According to Kaakejian, General Motors had Adam Piper, an "employee and Bolt battery expert," answer questions regarding the vehicle during an event in October 2019. (*Id.* at 6, ¶ 24.) Kaakejian asserts that during the event, Mr. Piper stated: "We engineered the battery system so that you can charge to 100% and maximize range. Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%." (*Id.*) It is unclear whether Kaakejian was present at this event or heard these statements. (*See id.*)

Kaakejian asserts that "marketing materials for the 2020 Chevy Bolt… pictured the vehicle [a]s being safe and capable of being charged indoors…" (Doc. 1-1 at 6, ¶ 29.) Kaakejian alleges, "These marketing materials were prepared on behalf of General Motors…". (*Id.*) "By August 2020, General Motors was aware of at least 12 fires involving the Chevrolet Bolt." (Doc. 1-1 at 6, ¶ 25.) Two months later, NHTSA "opened an investigation into the Chevrolet Bolt." (*Id.*, ¶ 27.)

At an unspecified time in 2021—though after Kaakejian's purchase in April 2021—"General Motors issued a recall notice for the [Bolt], stating that its batteries may ignite when nearing a full charge." (Doc. 1-1 at 7, ¶ 30; *see also id.* at 8, ¶ 39.) Kaakejian alleges that in the recall, "General Motors warned Plaintiff that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight." (*Id.*; *see also id.* at 8, ¶ 39.) According to Kaakejian, the battery defect requires "unforeseen accommodations and take precautions that interfere with the[] normal and expected use of the vehicle." (*Id.*, ¶ 31.)

Kaakejian alleges General Motors used "a marketing strategy that advertises a competitive mileage capacity to convey that consumers, such as Plaintiff, are receiving an electric vehicle that is able to maintain battery life for long distances." (Doc. 1-1 at 7, ¶ 35.) Kaakejian contends, "General

3

Motors falsely represented that the [Chevrolet Bolt] is safe and functional for normal use." (*Id.* at 4, ¶13.) Kaakejian asserts the company also "falsely represents … the expected battery usage and mileage capacity of the vehicle." (*Id.* at 8, ¶ 40.) However, Kaakejian contends that "in reality they cannot charge the vehicles to their full battery capacity or drive the vehicle for long distances due to fear of falling below seventy (70) miles remaining on a single charge." (*Id.*)

According to Kaakejian, General Motors advertised the Bolt had "long range capability" on its website. (Doc. 1-1 at 13, ¶ 80.) Kaakejian contends the marketing statements "were echoed by GM's dealership personnel at the time of sale who assured Plaintiff that the vehicle had a long-range and was safe." (*Id.*) Kaakejian also alleges marketing materials for the 2020 Bolt "were justifiably reviewed and relied upon by Plaintiff prior to sale." (*Id.* at 6, ¶ 29.) The alleged misrepresentations and concealment caused Kaakejian to suffer "anxiety, fear and emotional distress." (*Id.* at 7, ¶ 32; *see also id.* at 15, ¶ 93.)

On December 1, 2023, Kaakejian filed a complaint[3] seeking to hold General Motors liable for: (1) breach of an express warranty; (2) breach of an implied warranty; (3) violation of the Song-Beverly Act, related to failure to repair the vehicle nonconformities; (4) fraud; and (5) violation of California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200. (*See generally* Doc. 1-1 at 2-19.) General Motors seeks dismissal of the fourth and fifth claims pursuant to Rule 12(b)(6) and Rule 9 of the Federal Rules of Civil Procedure. (Doc. 8.) Kaakejian filed an opposition to the motion on January 23, 2024 (Doc. 8), to which General Motors filed a reply on February 2, 2024 (Doc. 9).

## II.    Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court may consider allegations in the pleadings, pleading exhibits, "and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

---

[3] Kaakejian filed his complaint in Kern County Superior Court, Case No. BCV-23-104011. (Doc. 1-1 at 2.) General Motors filed a Notice of Removal on January 3, 2024, thereby initiating the action in this Court. (Doc. 1.)

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740. (1976). A court must also construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). On the other hand, leave to amend may be denied where amendment would be futile. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.   Request for Judicial Notice

General Motors requests the Court take judicial notice of the fact that "the United States Environmental Protection Agency ("EPA") estimated that 2020-2022 model-year Chevrolet Bolts

have a total range of 259 miles." (Doc. 6-3 at 2.) General Motors repots, "This data is not subject to reasonable dispute and is reflected on EPA's public website." (*Id.*)

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As a result, the Court may take judicial notice of facts on a government website. *See Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1096 (9th Cir. 2020) (taking judicial notice of information posted on a governmental agency's website); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency).

Notably, Kaakejian does not oppose—or even acknowledge—the request for judicial notice in the opposition. (*See generally* Doc. 8.) Thus, the accuracy of the information identified was not disputed, and is properly the subject of judicial notice. *See Antonov v. General Motors,* 2024 WL 217825, at *11 (C.D. Cal. Jan. 19, 2024) (taking judicial notice of the EPA mileage estimates because the information is publicly available on the agency's website and not subject to reasonable dispute); *Jarose v. Cty. of Humboldt*, 2020 WL 999791, at *4 (N.D. Cal. Mar. 2, 2020) (taking judicial notice of data publicly available on the EPA's website). Therefore, the request for judicial notice is granted.

### IV.     Discussion and Analysis

General Motors seeks dismissal of the claims for fraud the Unfair Competition Law, to the extent it is based upon the "fraudulent prong" asserting: (1) Kaakejian fails to plead fraud with the particularity required by Rule 9 of the Federal Rules of Civil Procedure; (2) Kaakejian does not plausibly allege knowledge of the alleged defects at, or before, the time of purchase; (3) advertisements using estimates by the EPA cannot form the basis of the misrepresentation claim; and (4) "fraudulent concealment claims fail because they are barred by the economic loss rule"; and (5) Kaakejian fails to allege a transactional relationship with General Motors that gave rise to a duty to disclose. (Doc. 6 at 1, 12-20). In addition, General Motors contends Kaakejian's claim for violations of the UCL is also deficient. (*Id.* at 1, 20-22.)

**A.     Fourth Cause of Action: Fraud**

"Under California law, the elements for an intentional-misrepresentation, or actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir.2007). Kaakejian seeks to hold General Motors liable for fraud, raising two theories to support the claim: affirmative misrepresentation and fraudulent concealment related to the mileage range and battery safety. (Doc. 1-1 at 13-15, ¶¶ 80-93.)

### 1.     Compliance with Rule 9

Claims that are "grounded in fraud" are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Thus, under Rule 9, "[m]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). A plaintiff's factual allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, to satisfy the heightened pleading standard, a party must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark*, 889 F.3d 956, 964 (9th Cir. 2018)). However, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 (9th Cir. June 3, 2022) ("Under Fed. R. Civ. P. 9(b), a plaintiff must plead circumstances from which a court can plausibly infer the defendant's knowledge").

### 2.     Affirmative misrepresentation

Under California law, to state a cognizable claim for fraud based upon affirmative—or intentional—misrepresentation, a plaintiff must allege: "(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *UMG*

7

*Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir.2007); *Engalla v. Permanente Med. Group, Inc*., 15 Cal. 4th 951, 974 (1997). In addition, "for corporate defendants, [p]laintiffs must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *White v. J.P. Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1115 (E.D. Cal. 2016) (citation omitted); *see also Celebrity Chefs Tour v. Macy's, Inc.,* 16 F. Supp. 3d 1123, 1134 (S.D. Cal. Apr. 25, 2014) ("merely attributing misrepresentation to a corporate entity is inadequate").

Kaakejian premised the "affirmative misrepresentation" claim upon the marketing of the Chevrolet Bolt. (Doc. 1-1 at 13, ¶ 80.) Specifically, in support of this cause of action, Kaakejian asserts that "General Motors willfully, falsely, and knowingly marketed the subject vehicle as having long range capability." (*Id.*) Kaakejian alleges General Motors made such marketing statements on its website, and similar statements were made by "dealership personnel at the time of sale[,] who assured Plaintiff that the vehicle had a long-range and was safe." (*Id.*) Kaakejian asserts the "representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during pro- longed use, resulting in a substantial reduction in the range capability of the vehicle." (*Id.*, ¶ 81.) According to Kaakejian, "General Motors knew the representations were false and intended [for] Plaintiff to rely on them." (*Id.*, ¶ 82.) Further, Kaakejian asserts the company's "mileage range advertisements were part of an extensive advertising campaign, and Plaintiff was exposed to the advertisements." (*Id.*, ¶ 83.) Kaakejian alleges the decision to buy the Chevrolet Bolt was "based in part on the false and misleading representations described." (*Id.*) Significantly, district courts in the Ninth Circuit have repeatedly determined allegations similar to those plead by Kaakejian "are plainly insufficient under the heightened pleading standard of Rule 9(b)." *See, e.g., Condrashoff v. General Motors LLC*, 2024 WL 2399645, at *4 (E.D. Cal. May 23, 2024) (considering allegations nearly identical to those now before the Court, and granting a motion to dismiss); *see also McDonald v. General Motors LLC,* 2024 WL 1601844, at *4-5 (C.D. Cal. Feb. 23, 2024); *Epperson v. General Motors LLC*, 2023 WL 8628327, at *3-4 (S.D. Cal. Dec. 13, 2023).

        *a.*    *EPA mileage estimates*

As an initial matter, Kaakejian alleges General Motors indicated in a 2016 press release that the

8

Bolt would "have a battery range over 200 miles because of the use of a battery with improved thermal operating performance." (Doc. 1-1 at 5, ¶ 15.) Although Kaakejian alleges that the estimated mileage range "was made absent any reference to the EPA," Kaakejian does not identify the source of the mileage estimation in the press release. (*Id.*) Kaakejian also did not identify the sources for mileage estimates found on the website or other unidentified marketing materials.

The EPA "provide[s] consumers with a reasonable estimate of the fuel economy they can expect to achieve," but the agency "also warns consumers that the estimates are, indeed, estimates." *See Lloyd v. Ford Motor Co.,* 65 F.4th 851, 856-57 (6th Cir. 2023) (citation omitted). The Ninth Circuit expressly held "no misrepresentation occurs when a manufacturer merely advertises EPA estimates." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 Fed. App'x 608, 609 (9th Cir. 2014). Following *Gray*, courts found misrepresentation claims fail when based upon the marketing of the Bolt's estimated mileage range. *See, e.g., Condrashoff*, 2024 WL 2399645, at *5 ("to the extent plaintiffs intend to allege that defendant's affirmative misrepresentations consisted of GM's marketing and advertising of the Bolt's mileage range of over 200 miles on a full battery, those allegations cannot support a fraud claim as a matter of law"); *McDonald*, 2024 WL 1601844, at *4 (noting the Ninth Circuit's holding in *Gray* that "there is nothing false or misleading about a car manufacturer's advertising that identifies the EPA fuel economy estimates for the car" and dismissing the claim for affirmative misrepresentation related to the Bolt); *Kuehl v. General Motors LLC*, 2023 WL 8353784, at *2 (C.D. Cal. Nov. 17, 2023) ("GM's marketing of the Bolt's 259-mileage range …[is] not a misrepresentation as a matter of law"). Consequently, to the extent Kaakejian's affirmative misrepresentation claim is based upon statements or materials featuring mileage estimates from the EPA, the claim fails as a matter of law.

    b.  *Press release*

Even if the mileage estimate in the January 2016 press release is deemed a "misrepresentation" by General Motors, Kaakejian fails to allege facts sufficient to support a claim for fraud based upon the press release. Kaakejian does not indicate who made the press release, to whom General Motors issued the press release, or that Kaakejian was a recipient. Indeed, there are no facts supporting a conclusion that Kaakejian saw the press at any time before the vehicle purchase. Without such allegations, Kaakejian fails to comply with the heightened pleading requirements for the claim under Rule 9. *See,*

1  *e.g., McDonald*, 2024 WL 1601844, at *4 (finding a plaintiff failed to state a claim for affirmative
2  misrepresentation based upon the press release concerning the Bolt, because she "fail[ed] to identify
3  who made the statement, to whom the statement was made," and did "not allege she even saw the press
4  release"). Consequently, Kaakejian's claim cannot stand on statements made in the press release.

          c.  *Website and marketing materials*

6    Kaakejian asserts General Motor's "mileage range advertisements were part of an extensive
7  advertising campaign, and Plaintiff was exposed to the advertisements." (Doc. 1-1 at 13, ¶ 83.) For
8  example, Kaakejian alleges the company marketed the Bolt "as a long range, affordable electric
9  vehicle on its website." (*Id.* at 6, ¶ 26; *see also id.* at 13, ¶ 80.) Kaakejian also alleges that in
10 "marketing materials," General Motors presented the Bolt as "safe and capable of being charged
11 indoors." (*Id.* at 6, ¶ 29.) Kaakejian contends:

> Through dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues, Defendant pervasively and consistently represented that the vehicle had the best-in-class battery economy and touted its specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe.

16 (*Id.* at 14, ¶ 85.) According to Kaakejian, the decision to purchase the vehicle was "based in part on
17 the false and misleading representations." (*Id.*, ¶ 83.)

18   Importantly, a plaintiff must do more than allege general exposure to marketing to support a
19 claim for misrepresentation. For example, in *Kearns*, the plaintiff alleged that he was exposed to
20 representations from Ford regarding a vehicle through "Ford's televised national marketing campaign
21 [and] sales materials found at the dealership." *Id.*, 576 F.3d at 1125. Kearns also alleged he purchased
22 his vehicle "[i]n reliance upon these representations." *Id.* However, the Court observed: "Nowhere …
23 does Kearns specify what the television advertisements or other sales material specifically stated. Nor
24 did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed
25 to specify which sales material he relied upon in making his decision to buy [the] vehicle." *Id.*
26 Therefore, the Court found the allegations were insufficient to satisfy the requirements of Rule 9. *Id.*

27   As in *Kearns*, Kaakejian does not allege any specific information regarding visiting the website
28 for information on the Bolt, reviewing the printed materials—such as the brochure— or other

unidentified marketing materials, or seeing the television advertisements.  The allegations fail to satisfy the pleading requirements of Rule 9.  *See, e.g., Kearns*, 567 F.3d at 1126; *see also Baptist v. GM LLC* 2024 U.S. Dist. LEXIS 118004, at *15 (C.D. Cal. July 3, 2024) ("Without pleading when Plaintiffs were exposed to the [Bolt] brochure, or how or when they encountered the brochure, Plaintiffs fail to articulate the who, what, when, where, and how of the misconduct alleged") (internal quotation marks, citation omitted); *see also Condrashoff*, 2024 WL 2399645, at *4 (finding the plaintiffs' allegations were "plainly insufficient" where they alleged GM engaged in "an extensive advertising campaign, and plaintiffs were exposed to the advertisements").  Therefore, Kaakejian fails to state a claim for affirmative misrepresentation based upon statements on the website and marketing materials.

                *d.*        *Statements by dealer personnel*

Kaakejian purchased the vehicle from Three-Way Chevrolet Company.  (Doc. 1-1 at 3, ¶ 6.) According to Kaakejian, Three-Way Chevrolet is "an authorized dealer and agent of General Motors." (*Id.*)  In addition, Kaakejian alleges General Motors indicates on its website that it has 205 dealers in California.  (*Id.*)  Kaakejian asserts that "General Motors' dealership personnel assured Plaintiff of the long-range and safe nature of the vehicle."  (*Id.* at 6, ¶ 26; *see also id.* at 13, ¶ 80.)

Notably, courts have determined that such allegations fail to show a dealership was an "agent" of General Motors, and instead appear to be legal conclusions cast as factual allegations.  *See, e.g., Antonov,* 2024 WL 217825, at *11 (allegations that a dealership was "an authorized dealer and agent" of the defendant" and authorized by the defendant was a conclusory allegation of agency, and "insufficient to establish an agency relationship for pleading purposes" [citation omitted]); *Acedo v. DMAX Ltd.,* 2015 WL 12696176, at *28 (C.D. Cal. Nov. 13, 2015) (holding that "authorized independent dealerships" were not agents of General Motors despite allegedly identical branding of dealerships and the training support General Motors provided to dealerships to ensure "standardized brand experience"); *see also Salvestrini v. General Motors*, 2023 WL 11795666, at *9 (S.D. Cal. Dec. 13, 2023) (observing that "a number of courts have held that automobile dealerships, even manufacturer "authorized" ones, are not necessarily agents of automobile manufacturers" and citing cases).  Because Kaakejian offers no more than a legal conclusion that Three-Way Chevrolet was an "agent," it follows there are no allegations to support a conclusion that the Three-Way Chevrolet

dealership personnel were authorized to speak on behalf of General Motors.

Kaakejian's allegations concerning the statements of the dealership personnel are similarly sparce.  Kaakejian asserts only that the "dealership personnel at the time of sale … assured Plaintiff that the vehicle had a long-range and was safe."  (Doc. 1-1 at 13, ¶ 80; *see also id.* at 6, ¶ 26.)  Kaakejian does not provide any specific information to assist General Motors in identifying who made the statement, what was said, or their authority to speak on behalf of the company.  Without such additional allegations, Kaakejian fails to comply with the requirements of Rule 9.  *See, e.g., Deleon v. General Motors, LLC*, 2023 WL 9319286, at *2 (C.D. Cal. Dec. 20, 2023) (finding similar allegations were deficient because the plaintiff did "not identify any particular personnel or describe their statements except at the highest level of generality"); *Wieg v. Gen. Motors LLC*, 2023 WL 7393017, at *4 (N.D. Cal. Nov. 7, 2023) (dismissing a similar claim regarding the Bolt because the plaintiff failed to "include allegations about the specific content of the allegedly false representations, nor the identity of the GM employee(s) who made the allegedly false statements").

       *e.*  *Statements by Mr. Piper*

Finally, is unclear whether Kaakejian intends to base the affirmative misrepresentation claim upon statements made by Mr. Piper.  (*See* Doc. 1-1 at 13.)  Kaakejian alleges that Mr. Piper, a General Motors "employee and Bolt battery expert," answered questions regarding the vehicle during an event in October 2019.  (*Id.* at 6, ¶ 24.)  Kaakejian asserts Mr. Piper stated: "We engineered the battery system so that you can charge to 100% and maximize range.  Do whatever is best for your personal circumstances.  If you want maximum range, charge to 100%."  (*Id.*)  General Motors argues these allegations are insufficient to support Kaakejian's claim for misrepresentation.  (Doc. 6 at 14.)

Previously, in *Condrashoff*, this Court considered allegations nearly identical to those made by Kaakejian.[4]  *Id.*, 2024 WL 2399645, at *1-3.  The plaintiffs, George Condrashoff and Benita Asher, asserted they purchased a new 2020 Chevrolet Bolt, and sought to hold General Motors liable for "affirmative misrepresentation" under California law.  *Id.* at *1.  The plaintiffs asserted that "[a]t the time [they] acquired the subject vehicle, GM had advertised the Bolt as a long range, affordable

---

[4] Indeed, it appears the complaint in *Condrashoff* contained an identical scrivener's error with the identification of two different purchase dates including—as here—September 6, 2020.  *See id.*, 2024 WL 1601844, at *1 n.1.

12

electric vehicle on its website, and GM dealership personnel assured plaintiff of the long-range and safe nature of the vehicle." *Id.* (internal quotation marks omitted).  The plaintiffs also quoted the statements by Adam Piper in October 2019.  *Id.*  However, the Court found the "allegations are devoid of any clarification as to whom Mr. Piper said this to, whether plaintiffs heard this statement, and whether plaintiffs relied on it."  *Id.* at *4 (citation omitted). Therefore, the Court found the "plaintiffs' allegations of statements made by Adam Piper regarding charging the Bolt battery to 100% are insufficient to save their fraud claim."  *Id.*

Similarly, here, there are no allegations that Kaakejian attended the event, heard the statements of Mr. Piper, or relied upon the information from Mr. Piper when making the vehicle purchase.  The quoted statement of Mr. Piper, without more, is insufficient to support a claim for affirmative misrepresentation.  *See Condrashoff*, 2024 WL 2399645, at *4; *see also McDonald*, 2024 WL 1601844, at *4 (finding the plaintiff failed to state a claim for affirmative misrepresentation based upon Mr. Piper's statements, because she failed "to identify where the representations were made, if these statements were made to the general public or her specifically, or if she heard or relied on these representations prior to her January 2020 purchase of the Subject Vehicle").

### 3. Fraudulent concealment

Claims under California law for fraudulent concealment and omission sound in fraud and "must be plead[] with particularity under Rule 9(b)." *Kearns*, 567 F.3d at 1127 (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (Cal. 1997)); *see also Stewart v. Electrolux Home Prods.*, 304 F. Supp. 3d 894, 906 (E.D. Cal. 2018) ("even concealment or omission claims ... must be pled with particularity"); *Scherer v. FCA US*, 565 F. Supp. 3d 1184, 1189 (C.D. Cal. 2021) ("fraud by omission claims must meet Rule 9(b)'s particularity requirements").  Because a claim for fraudulent omission involves the failure to act—rather than an affirmative act— "claims based on an omission 'can succeed without the same level of specificity required by a normal fraud claim.'" *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1068 (E.D. Cal. 2022) (quoting *Kearns*, 567 F.3d at 1124); *see also Goldstein v. GM LLC*, 517 F.Supp.3d 1076, 1086 (S.D. Cal 2021) ("fraudulent omission claims can succeed without the same level of specificity required by a normal fraud claim" [citation omitted]). Importantly, however, "[a] fraud claim based upon the suppression or concealment of a material fact

13

must involve a defendant who had a legal duty to disclose the fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014).

The duty to disclose arises when: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Miller*, 620 F. Supp. 3d 1068 (citation omitted); *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) (identifying the same four circumstances). Kaakejian alleges:

> Defendant had a duty to disclose that the battery in the vehicle is unsafe at the point of purchase because: (1) Defendant had exclusive knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial misrepresentations about the mileage range, battery safety, and performance of the vehicle that were misleading without disclosure [of] the fact that the vehicle contained unsafe batteries that caused the vehicle to overheat and pose a risk of fire.

(Doc. 1-1 at 14, ¶ 89.) These allegations essentially recount the elements to establish a duty to disclose by General Motors and are insufficient to invoke liability for fraudulent concealment. *See, e.g., Condrashoff*, 2024 WL 2399645, at *5 (finding similar allegations "merely recite[d] the recite the second, third, and fourth circumstances under which a duty to disclose"). As a result, Kaakejian fails to state a cognizable claim for fraud based upon the theory of fraudulent concealment.

### 4. Conclusion

Kaakejian fails to allege facts related to any of the identified statements or advertising materials that are sufficiently specific to comply with the heightened pleading requirements of Rule 9. Likewise, Kaakejian offers only conclusory allegations that are insufficient under Rule 8 and Rule 9 related to show a duty to disclose, as required for a claim for fraudulent concealment. Accordingly, General Motor's motion to dismiss the fourth cause of action for fraud—based upon both affirmative misrepresentation and fraudulent concealment—is granted.[5]

///

---

[5] Because dismissal of the claim is appropriate due to the pleading deficiencies, the Court declines to reach the remaining arguments related to the fourth cause of action.

B.     **Fifth Cause of Action: Unfair Competition Law**

Kaakejian seeks to hold General Motors liable for violations of California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, *et seq.* (Doc. 1-1 at 15.) Under Section 17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Therefore, there are three prongs under which a claim may be established under Section 17200. *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent— to be considered unfair competition"); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong … is a separate and distinct theory of liability"). Given the disjunctive nature of the prongs, an action may be unfair even if it is not unlawful. *Cel-Tech Communications., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999). Kaakejian alleges that General Motors is liable under each prong. (Doc. 1-1 at 16-19.)

1.     Fraudulent practices

A "fraudulent" act is "one which is likely to deceive the public," and "may be based on misrepresentations … which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1474. Although the word "fraudulent" under Section 17200 "does not refer to the common law tort of fraud," *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008), the claim still requires allegations that the misrepresentation was directly related to injurious conduct, and that the claimant actually relied on the alleged misrepresentation. *In re Tobacco II Cases*, 46 Cal.4th 298, 336-37 (2009). Further, claims based upon the "fraudulent" prong are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).

Kaakejian's claim under the "fraudulent prong" reasserts the allegations related to the misrepresentation—or omission—by General Motors. As discussed above, the Court finds the allegations of fraud are insufficient to satisfy the requirements under Rule 9. Because Kaakejian fails to plead the circumstances surrounding the alleged fraud with particularity, the UCL claim is not cognizable to the extent it is based upon the "fraudulent" acts prong. *See Antonov,* 2024 WL 217825, at *29 ("Because Plaintiff's claim for a violation of the UCL's 'fraudulent prong' relies on the same

15

theories of fraudulent misrepresentation and fraudulent concealment that the court found to be insufficient above, the court concludes Plaintiff has also failed to allege a violation of the 'fraudulent prong' of the UCL").

### 2. Unlawful practices

Kaakejian seeks to hold General Motors liable for "unlawful practices" under Section 17200. (Doc. 1-1 at 18-19, ¶¶ 121-131.) The business acts proscribed under the "unlawful" prong of Section 17200 includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quoting *Barquis v. Merchants Collection Assoc.*, 7 Cal. 3d 94, 113 (1972)). In essence, the UCL "borrows violations of other laws and treats them as unlawful practices independently actionable under Section 17200." *Saunders v. Sup. Ct.*, 27 Cal. App. 4th 832, 839 (1994) (internal quotation marks, citation omitted).

"To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." *Aerojet Rocketdyne, Inc. v. Global Aero., Inc.*, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) (citation omitted); *see also Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong"). Predicate violations include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders*, 27 Cal. App. 4th at 838-39. General Motors contends Plaintiff's claim "fails because the Complaint does not identify the necessary underlying law." (Doc. 6 at 20, citing Doc. 1-1 ¶¶ 121-131.) Kaakejian does not address this argument in the opposition to the motion to dismiss. (*See generally* Doc. 8.)

It is undisputed that Kaakejian fails to identify a predicate violation in the complaint. (*See* Doc. 1-1 at 18-19; Doc. 8 at 4-7.) Instead, Kaakejian simply incorporated "the preceding paragraphs" to support the claim under the "unlawful prong." (Doc. 1-1 at 18, ¶ 121.) This vague assertion is insufficient, because a plaintiff alleging a UCL claim "must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993). The Court declines to speculate as to which claims—or provisions of law— Kaakejian believes are predicate violations. For this reason alone, the claim under the "unlawful"

prong is not cognizable.[6]

### 3. Unfair practices

Under California law, what constitutes "unfair" practices under the UCL remains unsettled. *See, e.g., Magee v. General Motors*, 2024 WL 1829692, *7 (C.D. Cal. Jan. 26, 2024) (noting the definition remains unsettled); *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (identifying various tests established to evaluate the prong); *see also Obertman v. Electrolux Home Care Prods.*, 482 F. Supp 3d 1017, 1027 (E.D. Cal. 2020) ("[t]here is some confusion in the law over the applicable test for 'unfair' conduct"); *In re Zoom Video Communs. Privacy Litig.*, 535 F.Supp.3d, 1047 (N.D. Cal. 2021) ("the proper definition of unfair conduct … is currently in flux among California courts" [internal quotation marks omitted]). The Ninth Circuit observed there are currently three tests for unfair practices:

> [C]ourts consider either: (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366, 108 Cal. Rptr. 3d 682 (2010)); (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Morgan v. AT&T Wireless Servs., Inc*., 177 Cal. App. 4th 1235, 1254, 99 Cal. Rptr. 3d 768 (2009); or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Id.*

*Doe,* 982 F.3d at 1215. The "traditional test for a consumer claim" is the second identified, which this Court consistently applies to evaluate claims for unfair practices under the UCL. *See Obertman*, 482 F. Supp. 3d at 1017.

General Motors argues that Kaakejian fails to state a claim under the unfair prong because the allegations do "not reference any established public policy that GM's actions have violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous." (Doc. 6 at 22.) In addition, General Motors contends Kaakejian fails to allege "any basis" to support a conclusion that an injury suffered by Kaakejian "outweighs the reasons, justifications and motives of GM." (*Id.*) Kaakejian does not respond to this argument in the opposition. (*See generally* Doc. 8.) Therefore, the Court finds

---

[6] Moreover, to the extent Kaakejian intended fraud to be the predicate act, the claim fails because when a plaintiff fails to state a claim under the "borrowed" law, it cannot support the UCL claim. *Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (a claim under the UCL "must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim").

Kaakejian concedes the pleading deficiencies and that the "unfair prong" is not cognizable. *See Laird v. United Teachers Los Angeles*, 615 F.Supp. 3d 1171, 1181 n.5 (C.D. Cal. 2022) (finding the plaintiff conceded an argument when it was not addressed in the opposition).

### V.     Leave to Amend

Kaakejian requests leave to amend be granted. (Doc. 8 at 1, 7.) Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Notably, Kaakejian did not address many arguments raised in the filed opposition. The Court has insufficient information to conclude that amendment is futile due to the sparsity of allegations in the complaint. Therefore, the Court will grant Kaakejian **one opportunity** to allege facts sufficient to support the claims for fraud and violations of the UCL. If Kaakejian fails to cure the pleading deficiencies identified, the Court will find further amendment is futile.

### VI.     Conclusion and Order

For the reasons discussed above, the fourth and fifth causes of action are not cognizable. Because dismissal is appropriate based upon the identified pleading deficiencies, the Court declines to address the remaining arguments raised by General Motors. Thus, the Court **ORDERS**:

1. Defendant's request for judicial notice is **GRANTED**.
2. Defendant's motion to dismiss (Doc. 6) is **GRANTED**.
3. The fourth and fifth causes of action for fraud and violations of the Unfair Competition Law are **DISMISSED** with leave to amend.

4. Plaintiff **SHALL** file any amended complaint <u>within 21 days</u> of the date of service of this order.

**<u>If Plaintiff fails to file an amended complaint, the complaint will stand with the fourth and fifth causes of action dismissed.</u>**

IT IS SO ORDERED.

Dated: __**July 23, 2024**__                                    ___/s/ Jennifer L. Thurston___
                                                                                  UNITED STATES DISTRICT JUDGE